

**FILED**

MAR 2 6 2008

CLERK

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  vs.<br><br>11 BANK ACCOUNTS<br>DESCRIBED AS:<br><br>Certificate of Deposit<br>In the amount of $100,383.56<br>Minnwest Bank<br>Luverne, Minnesota<br><br>Certificate of Deposit<br>In the amount of $100,404.11<br>Minnwest Bank<br>Tracy, Minnesota<br><br>Certificate of Deposit<br>In the amount of $100,410.96<br>Minnwest Bank<br>Montivideo, Minnesota<br><br>Certificate of Deposit<br>In the amount of $100,465.75<br>Minnwest Bank<br>Ortonville, Minnesota<br><br>Bank Account<br>In the amount of $18,015.75<br>Minnwest Bank<br>Ortonville, Minnesota<br><br>Bank Account<br>In the amount of $76,543.07<br>Minnwest Bank<br>Ortonville, Minnesota | CR. 06-4005-KES<br><br><br>REPORT AND<br>RECOMMENDATION<br>REGARDING<br>GOVERNMENT'S MOTIONS<br>TO STRIKE |

Bank Account                        )
In the amount of $4,292.51          )
Brookings Federal Bank              )
Brookings, South Dakota             )
                                    )
Certificate of Deposit              )
In the amount of $100,438.00        )
Minnwest Bank                       )
Redwood Falls, Minnesota            )
                                    )
Bank Account                        )
In the amount of $170,122.48        )
American Express                    )
Minneapolis, Minnesota              )
                                    )
Bank Account                        )
In the amount of $2,693.54          )
Bank of America                     )
Seattle, Washington                 )
                                    )
Bank Account                        )
In the amount of $54,529.99         )
Bank of America                     )
Seattle, Washington                 )
                                    )
            Defendants.             )

## INTRODUCTION

This matter is before the court pursuant to a verified amended complaint filed by the United States of America ("government") seeking forfeiture of the 11 bank accounts described in the above caption. Timothy Jewell has made an appearance in this matter, asserting claims to the bank accounts and seeking to prevent forfeiture. The government has moved to strike Mr. Jewell's verified answer and his claims that have been filed with the court. These motions were referred to this magistrate judge for a report and recommendation by the district court, the Honorable Karen E. Schreier, Chief Judge pursuant to 28 U.S.C. § 636(b)(1)(B).

2

## FACTS

On September 28, 2005, the Federal Bureau of Investigation ("FBI"), sent Timothy Jewell a letter announcing that it had seized the funds in a bank account in Seattle, Washington, in the amount of $54,529.99, held under the name of Mountainaire Equity.  The FBI announced its intention to forfeit this money.  Mr. Jewell filed a verified claim with the FBI on October 5, 2005, resisting the forfeiture and asserting an ownership interest in this bank account.

Also on September 28, 2005, the FBI notified Mr. Jewell that it had seized the funds in a second Seattle bank account in the amount of $2,693.54, held in the name of Black Rhino.  The FBI told Mr. Jewell it intended to seek forfeiture of these funds as well.  On October 5, 2005, Mr. Jewell filed a verified claim with the FBI resisting forfeiture and asserting an ownership interest in this bank account.

Following Mr. Jewell's resistance to the FBI's intended forfeiture, the government filed a verified complaint on January 12, 2006, and an amended verified complaint before any responsive pleading was entered on January 19, 2006.[1]  The government's complaint seeks civil forfeiture of the eleven above-described bank accounts totaling $828,299.72, alleging that

---

[1]The original complaint listed 12 defendant bank accounts, including three bank accounts in Seattle, Washington.  The amended complaint dropped one of the Seattle bank accounts in the amount of $10,619.42 from this action. Compare Docket No. 1 with Docket No. 5.

3

the bank accounts were used to commit criminal acts in violation of 18 U.S.C. § 1956. <u>See</u> Docket 5. Specifically, the government alleges that the bank accounts were used in an illegal pyramid/bank debenture scheme. <u>Id.</u> The government alleges that Timothy Jewell and Robert Woldt are currently being investigated regarding this alleged illegal activity.[2] <u>Id.</u>

Two of the bank accounts, located in Seattle, Washington, were held in the name of Timothy Jewell. <u>See</u> Docket 8, Return of Service.[3] Six of the bank accounts were in Minnesota in the name of American Old Time, American Old Time Corp., or American Old-Time Corp. <u>Id.</u> One Minnesota account was in the name of Project Anothen and another Minnesota account was in the name of Transworld Refinancing Establishment, Inc. <u>Id.</u> The lone South Dakota bank account in the amount of $4,292.51 was held in the name of Marketing International. <u>Id.</u>

The government sought permission from the court to publish notice of this forfeiture action in the Brookings Register, a daily newspaper of general circulation. <u>See</u> Docket 6. The district court, the Honorable Lawrence L. Piersol, granted the government permission to so publish the notice on February 1, 2006. <u>See</u> Docket 10. Despite having received a

---

[2]Neither party has indicated whether Mr. Jewell or Mr. Woldt were ever indicted on criminal charges. A search of federal court cases does not reveal any criminal action pending against Mr. Jewell.

[3] The proof of service lists the original twelve bank accounts rather than the eleven bank accounts listed in the amended complaint.

4

favorable ruling on its own motion to publish the notice of forfeiture, the government "forgot" to actually publish the notice of forfeiture until 18 months later, in late October and early November 2007.  <u>See</u> Docket 125.[4] This publication of the notice of forfeiture by the government was made *after* the government moved to strike Timothy Jewell's answer, which motion is discussed in more detail below.

Timothy Jewell received written notice of this forfeiture action via certified mail on January 30, 2006.  <u>See</u> Government Brief at page 4, ¶ 5 [Docket 89]; Declaration of Joanne Bender, ¶ 4 [Docket 86].  That written Notice of Civil Forfeiture in this case advised Mr. Jewell that, if he wished to contest the forfeiture, he must "file a statement of interest or right (claim)" within 30 days of receiving the government's complaint ***and*** he must also file an answer to the government's complaint within 20 days.  <u>See</u> Docket 86.  This notice also explained to Mr. Jewell exactly what information was required to be contained in his claim should he elect to file one:

> The statement of interest or right (claim) must be verified on oath and must state the interest in the property by virtue of which the claimant demands its restitution and the right to defend this action.  If the statement of interest or right (claim) is made by an

---

[4]Despite the fact that the government knew that only a very small portion of the funds seized in this forfeiture action were situated in Brookings, South Dakota, the government sought permission to publish notice of the forfeiture in Brookings only.  <u>See</u> Docket 6.  However, when the government actually published the notice in late 2007, in addition to the Brookings Register, the government also published the notice in newspapers in Minneapolis, Montevideo, Tracy, Rock County, Redwood, and Ortonville, Minnesota; and in Seattle, Washington.

agent, bailee, or attorney on behalf of the person entitled to possession of the property, it shall state the authority by which he/she is entitled to make the claim on behalf of such person.

> The statement of interest or right (claim) must be filed with the United States District Court at the following address:

> > Clerk of Court
> > U.S. District Court
> > 400 S. Phillips Ave.
> > Sioux Falls, SD 57104

See Docket No. 86.

On February 14, 2006, Leigh Talley, an attorney from Spokane, Washington, timely filed a verified answer on behalf of Mr. Jewell contesting the government's forfeiture in this case. See Docket 13. Mr. Jewell signed the answer under oath and under penalty of perjury. Id.

In his verified answer, Mr. Jewell admitted that the United States District Court for the District of South Dakota was vested with jurisdiction over this case and that venue was proper in this district. Id. at ¶¶ 2-3. Mr. Jewell indicated that he did not have sufficient information to admit or deny the description of the defendant property or the value of those named accounts. Id. at ¶ 4. Mr. Jewell admitted that he and Robert Woldt were under investigation and that Intware and Dataport were entities that developed and leased software. Id. at ¶ 6. He also admitted that Mountainaire Equity and Black Rhino are Washington corporations owned by him. Id. at ¶¶ 12, 15. Mr. Jewell denied that the defendant property was used in connection with illegal activity in violation of 18 U.S.C. § 1956. Id.

at ¶¶ 18-19.  Mr. Jewell either denied the remaining government allegations in the complaint, or asserted that he was without sufficient information to admit or deny them.  Id.

Mr. Jewell asserted the following affirmative defenses in his verified answer:  (1) failure to state a claim upon which relief may be granted, (2) illegal seizure by the government of the defendant properties in violation of the Fourth Amendment of the United States Constitution, (3) no probable cause for the forfeiture action, and (4) that Mr. Jewell "is an innocent owner of *a portion* of the funds seized in this action."  Id. at ¶¶ 20-23 (emphasis added).  Mr. Jewell requested dismissal of the complaint with prejudice, costs and attorneys fees, and a trial by jury.  Id. at page 4, prayer for relief.

A scheduling order was issued by the district court and discovery began.  Mr. Jewell made a motion to compel discovery from the government in September 2006, which was ruled on by the court in January 2007.  In September 2006, the government pointed out to Mr. Talley that it believed the pleadings filed on Mr. Jewell's behalf were deficient because, although he timely filed an answer, Mr. Jewell had not filed a claim under oath.  In response to this conversation, Mr. Jewell's attorney faxed to the government copies of the verified claims filed by Mr. Jewell with the FBI in October 2005.  At this point, the parties dispute the understanding each took from this exchange.  Mr. Jewell represents that he understood that the government's objection over the lack of the filing of a verified claim was

7

satisfied by providing copies of the verified administrative claims.  The government contends that it never represented to Mr. Jewell or his attorney that the verified administrative claims were sufficient to satisfy the requirement of a verified claim in this proceeding.

On March 1, 2007, Mr. Talley moved to withdraw from representing Mr. Jewell.  The court granted the motion on June 7, 2007.

On October 18, 2007, the government filed a motion to strike Mr. Jewell's verified answer [Docket 88], asserting that Mr. Jewell lacked standing to contest this forfeiture proceeding because, although he filed an answer, he did not file a separate claim.

Thereafter, on November 19, 2007, Timothy Jewell, acting *pro se*, filed a document entitled "Claim of Right or Title Statement of Interest," in which he asserted an ownership interest in every defendant property in this case except the Brookings, South Dakota, bank account.  See Docket 97.  On November 30, 2007, Mr. Jewell filed a document entitled "Support Statement of Interest in Claim" in which he set forth detailed facts supporting his ownership interest in the two Seattle, Washington, bank accounts, as well as the $170,122.48 bank account in Minneapolis, Minnesota.  See Docket 116.  As to each bank account, he asserted either outright ownership of the funds deriving from his sole ownership of the corporations in whose names those accounts were held or, in the case of the Minneapolis account, he asserted that the funds were being held for him by

an escrow agent and attached an escrow agreement to his statement.  Id.
The government then moved to strike Mr. Jewell's claims as untimely.  See
Docket 126.

### DISCUSSION

**A.    Clarification of "Standing"**

As an initial matter, the court notes that there are two types of
"standing" in forfeiture cases:  Article III standing and statutory standing.
The Eighth Circuit has explained that Article III standing depends upon the
threshold issue of whether a claimant in a forfeiture action can state a
colorable property interest in the defendant property while "statutory
standing" goes to the merits of whether the claimant will prevail upon his
claim of ownership of the property.  See United States v. One Lincoln
Navigator 1998, 328 F.3d 1011, 1013-1014 (8TH Cir. 2003).  There are a
number of distinctions between the two types of standing.  Whether a
claimant can state a colorable property interest for purposes of establishing
Article III standing depends on state law.  Id.  However, whether a claimant
can establish an ownership interest sufficient to enable him to prevail on
the merits of his claim for purposes of statutory standing is determined by
federal law.  Id. at 1015 (citing 18 U.S.C. § 983).  Article III standing is an

issue for the court; statutory standing presents an issue for the finder of fact at trial.  Id. at 1013-1015.[5]

The government states at page 7 of its brief that "Standing is an issue for the Court not the jury."  See Docket No. 85 at page 7 (citing to One Lincoln Navigator).  The government's position is that by filing a verified answer, but failing to file a separate, verified claim, Mr. Jewell has not established statutory standing.  Notwithstanding the discussion in One Lincoln Navigator that "statutory standing" is an issue for the jury, other courts have clarified that one who wishes to contest a forfeiture proceeding must satisfy the procedural requirements for filing a verified claim and an answer in order to confer "statutory standing" on himself, and that the question as to whether these procedural requirements have been met is an

---

[5]Like all fact issues, however, summary judgment may be appropriate to determine statutory standing if there are no material issues of fact and the moving party demonstrates that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; One Lincoln Navigator, 328 F.3d at 1013-1015.

issue for the court.  See United States v. $487,825, 484 F.3d 662, 664-665 (3d Cir. 2007).[6]

The issue presented by the government's motion is whether Timothy Jewell has put the government on notice of his claim to part of the nearly $1million in seized properties in this case sufficient to simply enable him to *appear* as a claimant.  It would then remain to be decided, at some future date, whether, on the merits, Mr. Jewell does or does not have sufficient facts to prevent forfeiture of the property.  With this understanding, the court moves on to consider the government's argument that, by failing to file both an answer to the government's complaint *and* a separate verified claim, Timothy Jewell has failed to establish standing sufficient to allow the court to consider the merits of his claim.

**B.**  **Jewell's Failure to File a Separate Verified Claim**

The procedure for contesting a forfeiture proceeding is set forth in 18 U.S.C. § 983.  Section 983 provides in pertinent part as follows:

---

[6]As to Article III standing, the claimant must meet a threshold burden of establishing "sufficient ownership interest in the property to create a case or controversy.  This threshold burden is not rigorous: 'To have standing, a claimant need not prove the underlying merits of the claim.  The claimant need only show a colorable interest in the property, redressable, at least in part, by a return of the property.' " Id. at 1013 (quoting United States v. 7725 Unity Ave. N., 294 F.3d 954, 957 (8th Cir. 2002)).  "We have held in a number of cases that a colorable ownership interest 'may be evidenced in a number of ways including showings of actual possession, control, title and financial stake.' " Id. (quoting United States v. One 1945 Douglas C-54 Aircraft, 647 F.2d 864, 866 (8th Cir. 1981)).

(a) **Notice; claim; complaint–**

        \*    \*    \*

(4)(A) In any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the seized property *may* file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims, except that such claim may be filed not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint.

(B) A person asserting an interest in seized property, in accordance with subparagraph (A), *shall* file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim.

See 18 U.S.C. § 983(a)(4)(A) (emphasis added).  The court notes that this statute uses the mandatory *"shall"* in describing a claimant's obligation to file an *answer* to the government's complaint of forfeiture, but the statute uses the permissive *"may"* in describing a claimant's obligation to file a *claim*.

Compare 18 U.S.C. § 983(a)(4)(A) with subsection (a)(4)(B).  Both subsections of the statute address what a person "claiming" or "asserting" an interest in seized property should do if they wish to have the court determine their interest in the property.  One's reasonable conclusion upon reading this statute might be that, while the filing of an "answer" is mandatory in order to contest forfeiture ("shall"), the filing of a "claim" is not mandatory in order to contest forfeiture ("may").

12

Rule C of the Supplemental Rules for Certain Admiralty and Maritime Cases also addresses the procedure a claimant in a forfeiture action must take to assert an interest in the defendant property and avoid forfeiting the property to the government.  Rule C provides in pertinent part as follows:

(1)   **When Available.**  An action in rem may be brought:

   (a)   To enforce any maritime lien;

   (b)   Whenever a statute of the United States provides for a maritime action in rem or a proceeding analogous thereto.

Except as otherwise provided by law a party who may proceed in rem may also, or in the alternative, proceed in personam against any person who may be liable.

Statutory provisions exempting vessels or other property owned or possessed by or operated by or for the United States from arrest or seizure are not affected by this rule.  When a statute so provides, an action against the United States or an instrumentality thereof may proceed on in rem principles.

* * * * * *

(4)   **Notice.**  No notice other than execution of process is required when the property that is the subject of the action has been released under Rule E(5).  If the property is not released within 10 days after execution, the plaintiff must promptly–or within the tine that the court allows–give public notice of the action and arrest [of the property] in a newspaper designated by the court order and having general circulation in the district, but publication may be terminated if the property is released before publication is completed. . .

* * * * * *

(6)   **Responsive Pleading; Interrogatories**.

   (a)   Civil Forfeiture.  In an in rem forfeiture action for violation of a federal statute:

13

      (i)     a person who asserts an interest in or right against the property that is the subject of the action must file a verified statement identifying the interest or right:

          (A)    within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4), or

          (B)    within the time that the court allows;

      (ii)    an agent, bailee, or attorney must state the authority to file a statement of interest in or right against the property on behalf of another; and

      (iii)   a person who files a statement of interest in or right against the property must serve an answer within 20 days after filing the statement.

<u>See</u> Rule C(1) and (6)(a), Supplemental Rules for Admiralty and Maritime Cases.[7]

It is said that everyone is presumed to know the law. <u>Baker v. Norris</u>, 321 F.3d 769, 772 (8th Cir. 2003). However, this premise is strained to the breaking point to say that a lay person who has an interest in a bank account which is the subject of a forfeiture action could know that there are procedural rules that he must abide by buried away in the rules for admiralty and

---

[7]Rule C(6) has now been amended and also largely supplanted by a new rule, Rule G of the Supplemental Rules, which makes more clear the fact that the rule applies to civil forfeiture actions. However, Rule G did not become effective until December 1, 2006, which is *after* the relevant time frame when Mr. Jewell was filing his verified answer. Therefore, the court applies the version of Rule C which was in effect at the time Mr. Jewell filed his verified answer and the court declines to apply Rule G.

maritime cases.  Then, of course, there is the not insignificant task of locating the rules for maritime and admiralty cases, codified as they are at the end of the "forms" appendix to the Federal Rules of Civil Procedure.  Finally, assuming that Mr. Jewell knew that the admiralty and maritime rules applied to him, and that he actually located those rules, Rule C itself describes the availability of the rule as being restricted to "maritime liens," "maritime actions in rem," and "proceedings analogous thereto."  See Rule C(1)(a) and (b).  This introduction to Rule C would certainly have signaled to any reader that Rule C did not apply in non-maritime, non-admiralty cases–unless the reader kept reading to subsection (6).

Be that as it may, the court will proceed with the fiction that Mr. Jewell knew he was supposed to comply with rules of procedure for maritime and admiralty cases.  The fiction is not all that difficult to sustain where, as here, Mr. Jewell received notice via certified mail of the contents of Rule C.  Rule C provides that a claimant must file his verified claim with the court "within 30 days after the earlier of (1) the date of service of the Government's complaint or (2) completed publication of notice under Rule C(4) . . ."  See Rule C(6)(a)(i)(A).

Here, the government never completed publication of notice until early November 2007.  Mr. Jewell's claim and support statement of that claim were filed on November 16 and November 30, 2007, well within 30 days of the government completing publication of the notice of this action.  However, rule C(6) says the 30 days begins to run from the date of service of the government's

complaint or the date of completed publication of notice, whichever is *earlier*. Here, the earlier date is the date the government completed service, which was on January 12, 2006.  Mr. Jewell's claim was thus untimely.

"The purpose of Rule C(6) is 'to inform the court that there is a claimant to the property who wants it back and intends to defend it.' " United States v. Three Parcesl of Real Property, 43 F.3d 388, 392 (8th Cir. 1994), cert. denied, 516 U.S. 945 (1995).  The requirement that the claim be verified is intended to weed out false or frivolous claims.  United States v. $103,387.27, 863 F.2d 555, 559 (7th Cir. 1988) (citing United States v. $2,857, 754 F.2d 208, 213 (7th Cir. 1985); Baker v. United States, 722 F.2d 517, 519 (9th Cir. 1983); Untied States v. Fourteen Handguns, 524 F. Supp. 395 (S.D. Tex. 1981)).

In Three Parcels, the claimants filed notices under oath listing the defendant properties and stating that "Gilbert Dowdy et, al, [sic] claimant(s) . . . file herewith Notice of Claim to the above mentioned Defendant properties.  In support thereof Claimant(s) would state under the penalty of perjury that legal title and interests in the aforesaid Defendants bearing claimants [sic] names are the legal foundation for this Claim." Three Parcels, 43 F.3d at 392.  The notice was then signed and dated by Gilbert Dowdy and Samuel Dowdy.  Id. The court held that the notices did not meet the requirements of Rule C(6) because they did not specify (1) which of the three properties each claimant was claiming an interest in and (2) the use of the term "et al." did not specify who, besides Gilbert Dowdy, was making a claim to the defendant properties.

16

Id. Since one of the properties listed "Cannon Management" as its owner of record and another property listed Arthur Mitchell as the owner, the court noted that it was impossible to tell from the notice of claim filed whether claim to the property was being made by either of the Dowdys, or by the owners of record, or both. Id.

In United States v. Ford 250 Pickup, 980 F.2d 1242, 1243-1244 (8th Cir. 1992), the claimant, Saddle Creek, timely filed a certified claim in response to the government's complaint for forfeiture, but never filed an answer until approximately two months after the deadline for answering had passed. In response to the government's motion to strike Saddle Creek's answer, Saddle Creek argued that its timely-filed claim was sufficient, by itself, to satisfy the requirements of an answer so that a separate answer was not necessary. Id. at 1245. The court held that Supplemental Rule C(6) unambiguously requires both an answer and a claim be filed. Id. Furthermore, the court held that Saddle Creek could have excused its untimely filing of its answer by showing excusable neglect or a meritorious defense, but that Saddle Creek did not show either of these things. Id. See also United States v. $487,825.00, 484 F.3d 662, 664-665 (3d Cir. 2007) (holding that, where a claimant had filed an answer, but not a separate claim, and the answer did not contain a description of the claimant's interest in the property, the answer did not fulfill the purposes of both a claim and an answer).

17

Other courts have accepted a verified answer in lieu of a separate answer and a separate verified claim where the verified answer meets all of the requirements of a verified claim.  <u>See</u> <u>United States v. One Urban Lot</u>, 885 F.2d 994, 999-1000 (1st Cir. 1989) (citing <u>Galatis v. Galatis</u>, 55 F.2d 571, 572 (5th Cir. 1932); <u>The Rosalie M.</u>, 12 F.2d 970, 971 (5th Cir. 1926)).  In addition, where a claimant represents himself *pro se*, some courts have found the claim requirements of Rule C(6) satisfied by coupling the government's allegations in the complaint with the claimant's statements in the claim to determine whether the two documents, read together, reasonably define the extent of the interest being claimed and the defendant's right to defend the action.  <u>United States v.</u> <u>Funds From Prudential Securities</u>, 300 F. Supp. 2d 99, 108 (D.D.C. 2004).

The government argues that the law in the Eighth Circuit is that a claimant must strictly comply with the requirements of Rule C(6) by filing both pleadings.  Statements to that effect can be found in Eighth Circuit cases, but this court has yet to find an Eighth Circuit case presented with facts where a verified answer contained all the elements that would have been contained in a verified claim and refused to accept the verified answer as both the claim and answer.  <u>See</u> <u>Three Parcels</u> 43 F.3d at 392 (holding that the pleading filed by claimants did not satisfy the elements of both a verified claim and an answer because it failed to specify who the claimants were and to which properties each claimant was making claim); <u>Ford 250 Pickup</u>, 980 F.2d at 1243-1245

18

(filing of claim, without answer, did not satisfy elements required in an answer and claimant, a lawyer, did not seek an extension of time from the court).

Here, Mr. Jewell's verified answer was filed within the time frame necessary for a verified claim, 30 days. The answer gave the government notice that Mr. Jewell is claiming to be an innocent owner. The verified answer also gave the government notice that Timothy Jewell was claiming ownership of a "portion" of the seized property. The crux of the matter is that Timothy Jewell's verified answer did not specify *which* of the 11 bank accounts he was asserting an interest in.

As evidenced by its complaint, the government knew when it began this forfeiture action that the Seattle bank accounts were held by Timothy Jewell. The fact that the government anticipated that Timothy Jewell might be a claimant is evidenced by the fact that the government sent notice to him personally of this forfeiture action. There can be no surprise on the part of the government to learn that Timothy Jewell is asserting an ownership interest in the Seattle bank accounts held in his own name.

Furthermore, in response to the government's inquiry regarding the lack of a separate claim in this case, Mr. Jewell gave the government copies of the verified administrative claims filed by Mr. Jewell with the FBI indicating an ownership interest in the two Seattle bank accounts specifically. However, there is simply no getting around the fact that a necessary element of a claim, whether it is part of a verified answer or a separate pleading, is that the

19

claimant specify *which* property he is asserting an interest in, and Mr. Jewell's verified answer fails to contain this information.  Had Mr. Jewell's verified answer contained this information, legal authority exists to accept the verified answer in lieu of a separate claim and answer.  Without it, the court cannot accept the verified answer as Mr. Jewell's claim in this matter.

**C.    Extension of Time to File Claim**

The failing of Mr. Jewell's verified answer is not present in his claim and statement in support of claim, which specify that Mr. Jewell is claiming an interest in three of the eleven bank accounts:  the two Seattle bank accounts in his name and the Transworld bank account held by American Express in Minneapolis, Minnesota.  However, these two documents were filed out of time.  The court interprets Mr. Jewell's response to the government's motion to strike his verified answer, and his subsequent filing of a claim and support statement, as a request to extend the time for him to file his claim.

It is recognized that a district judge has discretion to grant a claimant additional time to file a claim.  United States v. Ford 250 Pickup, 980 F.2d 1242, 1245 (8th Cir. 1992).  See also One Urban Lot, 885 F.2d at 999-1001 (citing United States v. 1982 Yukon Delta Houseboat, 774 F.2d 1432, 1435 (9th Cir. 1985); United States v. 1967 Mooney M20-F Aircraft, 597 F. Supp. 531, 532 (N.D. Ga. 1983); United States v. One 1979 Oldsmobile-Cutlass Supreme, 589 F. Supp. 477, 478 (N.D. Ga. 1984)); United States v. $103,387.27, 863 F.2d 555, 561 (7th Cir. 1988).

The factors a court should consider in determining whether to allow a claimant to assert an untimely claim are:  (1) whether the claimant has advised the government of his interest in the defendant property before the claim deadline; (2) whether the government would be prejudiced by allowing the late filing, (3) whether the claimant is acting *pro se*, (4) whether the claimant made a good-faith effort to comply initially with Rule C(6)'s requirements, (5) whether the government encouraged the delay, (6) the reasons proffered for the delay, (7) the sufficiency of the answer in meeting the basic requirements of a verified claim, and (8) whether granting the extension would undermine the goals of the time restriction and verification requirements for claims.  <u>$103,387.27</u>, 863 F.2d at 561-562; <u>United States v. One 1979 Mercedes 450 SE</u>, 651 F. Supp. 351, 353 (S.D. Fla. 1987).  <u>See also</u> Jimmy Gurule, Sandra Guerra Thompson, & Michael O'Hear, <u>The Law of Asset Forfeiture</u>, § 3-1(g), at 84 (2d ed. 2004) (reciting the same list of factors to be considered when a claimant asks for an extension of time to file a verified claim).  Where allowing an extension of time to file or amend a claim would not undermine the "goals underlying the time restriction and verification requirement of Rule C," courts have liberally permitted such amendment.  <u>$103,387.27</u>, 863 F.2d at 561-562.

In <u>One 1979 Mercedes</u>, the court granted the claimant, who was represented by an attorney, an extension of time where the government showed no prejudice resulting from the untimely revelation of the exact nature of the

claimant's identity and the parties had already expended money and time litigating the case. <u>One 1979 Mercedes 450 SE</u>, 651 F. Supp. at 354-355.

In <u>$103,387.27</u>, the Seventh Circuit found the district court had abused its discretion in refusing to allow the claimant to amend the admittedly deficient claim where the claimant had made a good faith effort to comply with the requirements for filing a claim, the defect in the claim was technical, the government would not be prejudiced, and the purposes of Rule C(6) would not be frustrated by allowing the amendment. <u>$103,387.27</u>, 863 F.2d at 563.

Here, the court concludes that the circumstances surrounding the filing of Mr. Jewell's belated claims counsel that he should be granted an extension of time so as to make the claims timely. The reasons the court considers in reaching this conclusion are as follows. First of all, even though the rules governing publication of notice and time for filing a claim do not strictly determine this issue, the court finds it noteworthy that the government, represented throughout this litigation by lawyers who specialize in forfeiture work, did not act timely in publishing the notice in this case, in fact publishing the notice a year and a half after the inception of the case, which cannot be considered "promptly" within the meaning of Rule C(4). It would turn the law upon its head to look the other way concerning the government's shortcomings, but hold a *pro se* claimant strictly accountable for complying with Rule C(6).

Another fact considered by the court counseling that Mr. Jewell should be given an extension of time so that his claims are considered timely filed is

22

that the government cannot possibly be prejudiced.  Although Mr. Jewell failed in his verified answer to specify each account he was claiming an interest in, he had previously told the government in his administrative claim to the FBI which accounts he claimed an interest in.  Furthermore, Mr. Jewell's claim to ownership of accounts in his own name is obvious and the name of the owner of the two Seattle accounts was known to the government throughout this litigation.

In addition, the government's own conduct during the course of this litigation may have mislead Mr. Jewell into thinking that he had satisfied Rule C(6)'s claim requirement.  After the government voiced its first concerns about whether Mr. Jewell had satisfied the claim requirement, Mr. Jewell faxed to the government copies of the administrative claims filed by Jewell with the FBI.  Although the government points out that, after receipt of these claims, it never conceded to Mr. Jewell that the administrative claims were sufficient to satisfy the requirements of Rule C(6), the government also did not tell him that it considered the administrative claims *in*sufficient, either.  The government's lengthy silence in the wake of having received those administrative claims could reasonably lead a lay person like Jewell to conclude that he had satisfied the government's concerns about whether his claim was adequately plead.  The government's motion to strike was not filed until some 13 months after Mr. Jewell faxed his administrative claims to the government.  In the interim,

the parties expended time and money litigating this case and engaging in discovery.

Another factor to take into consideration is the magnitude of the property the government is seeking to forfeit. In this case, the government seeks to forfeit almost $1 million in cash from 11 bank accounts. This is a substantial sum. In light of the fact that the government has not shown any prejudice as a result of allowing Mr. Jewell an extension of time, and in view of the fact that allowing him an extension of time merely allows him to *appear*, it does not determine that he has a right to any of the money on the merits of his claim, the court finds this factor favors allowing the extension of time.

Finally, the court notes that the record reflects a good-faith effort to comply with the claim-filing requirement on the part of Mr. Jewell. The verified answer was itself a good-faith effort to comply with Rule C(6), as evidenced by the affidavit filed by Mr. Jewell's former lawyer. Also, when the government inquired about whether Mr. Jewell had met the claim filing requirement, Mr. Jewell promptly provided the government with copies of his administrative claims that he had previously filed with the FBI. Then when the government filed its motion to strike, Mr. Jewell responded by promptly filing a verified claim and statement in support of that claim. The court finds that Mr. Jewell has established sufficient facts to constitute good cause for granting him an extension of time to file his claims so as to accept the claims he filed as timely.

However, while good cause exists for allowing Mr. Jewell an extension of time so as to assert claims to the two Seattle bank accounts and the Transworld account, the same cannot be said as to the other 8 accounts Jewell lists in his claim. These other 8 accounts were not identified in the administrative claims Jewell filed with the FBI, they were not identified in Jewell's answer, and they were not held in Jewell's name. It was not until Jewell filed his claim on November 19, 2007, nearly some two years after this forfeiture action was initiated, that he asserted an interest in the other accounts. Despite the notice provided by the government in its motions to strike the answer and the claim, Mr. Jewell has yet to provide any facts in support of his ownership interest in those accounts. The government's motion to strike that portion of Mr. Jewell's claim that asserts an interest in the accounts other than the two Seattle bank accounts and the Transworld account should, therefore, be granted.

As to these other 8 accounts, Mr. Jewell's statement that he relied upon his attorney to assert his claims is unavailing. Despite what Mr. Jewell might have thought before the motions to strike were filed, he clearly was on notice after the motions to strike that the government believed his claims to be deficient. Nowhere in the record to date, either before or after the government made its two motions to strike, has Mr. Jewell provided the court with any facts in support of his ownership of any of the accounts except the two Seattle accounts and the Transworld account.

As the Supreme Court has noted in a civil forfeiture case, "[t]he dignity of the court derives from the respect accorded to its judgments.  That respect is eroded, not enhanced, by too free a recourse to rules foreclosing consideration of claims on the merits."  <u>Degen v. United States</u>, 517 U.S. 820, 828 (1996). Where alternative means exist to protect the government's interests, the "harsh sanction of absolute disentitlement" to simply participate in a forfeiture action should not be employed.  <u>Id.</u> at 827.

Here, the goals of Rule C(6) are not undermined by allowing an enlargement of time so as to encompass Mr. Jewell's claim.  The court concludes that Mr. Jewell should be allowed to proceed with his claims to the two Seattle bank accounts and the Transworld account, but that he has not established standing to resist forfeiture of any other account against which the government is proceeding in this case.

## CONCLUSION

Based on the foregoing, the court recommends that the government's motion to strike Mr. Jewell's answer [Docket 88] and its motion to strike the claims of Mr. Jewell [Docket 126] be granted in part and denied in part, consistent with the above discussion.

## NOTICE TO PARTIES

The parties have ten (10) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  Failure to file timely

objections will result in the waiver of the right to appeal questions of fact.

Objections must be timely and specific in order to require *de novo* review by the

district court.  <u>See Thompson v. Nix</u>, 897 F.2d 356 (8th Cir. 1990); <u>Nash v.</u>

<u>Black</u>, 781 F.2d 665 (8th Cir. 1986).

     Dated March 26, 2008

                          BY THE COURT:

                          VERONICA L. DUFFY
                          UNITED STATES MAGISTRATE JUDGE